UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BALVINO MACIAS TERAN,<br><br>Defendant. | Case No. CR16-335RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's "Motion to Reduce Sentence Pursuant to First Step Act and for Compassionate Release." Dkt. # 136. Having considered the motion and the record contained herein, the Court finds as follows:

**I.    PROCEDURAL MOTIONS**

As an initial matter, the Court finds compelling reasons justify sealing defendant's medical records (Dkts. # 144, # 153), as well as Exhibits A–E of the government's response (Dkts. # 148, # 157). Defendant's motions to seal (Dkts. # 143, # 152) and the government's motions to seal (Dkts. # 147, # 156) are accordingly GRANTED.[1] The government's motion to file an overlength response (Dkt. # 145) is also GRANTED.

---

[1] Defendant also filed a motion to seal "Medical Records filed on December 18, 2020" (Dkts. # 150, # 150-1), but no additional medical records appear to have been filed under seal on that date. Therefore, defendant's motion to seal (Dkt. # 150) is DENIED.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

## II.  BACKGROUND

Defendant is a 52-year-old inmate currently incarcerated at Reeves I & II Correction Institution ("Reeves"). Dkt. # 142 at 2, 7; Dkt. # 146 at 5. On June 13, 2017, defendant pled guilty to conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 846. Dkt. # 86 at 1. On October 20, 2017, the Court sentenced defendant to 72 months' imprisonment and four years of supervised release. Dkt. # 118 at 2–3. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on January 31, 2022. Dkts. # 136 at 11, # 146 at 5. He now moves for compassionate release.

## III.  LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>   (1) in any case—
>
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> (ii) . . .
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2),

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 3

extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant**—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an

  extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13.[2]

---

[2] For the reasons set forth in detail in <u>United States v. Van Cleave</u>, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3-5 (W.D. Wash. May 29, 2020), "the Court finds the guidance of U.S.S.G. § 1B1.13 persuasive, but not binding." <u>Id.</u> The Court will exercise its discretion to consider "extraordinary and compelling" circumstances that may exist beyond those explicitly identified by the Sentencing Commission in its outdated policy statement. <u>Id.</u>

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

## IV. DEFENDANT'S CIRCUMSTANCES

### a. Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must consider whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement by filing requests on April 23, 2020 and May 1, 2020, Dkts. # 136 at 2, # 146 at 10–11, which the Facility Administrator at Reeves denied on May 4, 2020. Dkt. # 136 at 14–15. The Facility Administrator's denial informed defendant that he was "not eligible for consideration of compassionate release," and the denial letter did not set forth any rights to an administrative appeal or explain the procedures to file one. Id. Assuming *arguendo*, that defendant has satisfied the exhaustion requirement,[3] the Court's evaluation of the merits of defendant's motion nevertheless weigh in favor of denial of relief.

### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based primarily on his health issues, which include defendant experiencing symptoms consistent with COVID-19 starting on or around July 19, 2020, while incarcerated at Reeves. Dkt. # 136 at 3. As of July 27, 2020, defendant alleges that he felt "fever, shortness of breath, aches and pain in his joints, and pain in his chest." Dkt. # 136 at 3. When defendant was finally tested for COVID-19 approximately a month later on August 18, 2020, the result was negative. Dkts. # 136 at 3–4, # 142 at 3. As of early November, defendant alleged that he continued to suffer from "chest pain, shortness of

---

[3] The mere fact that the parties agree that defendant satisfied the exhaustion requirement does not, by itself, mean that defendant has exhausted. See United States v. Van Sickle, No. CR18-0250JLR, 2020 WL 3962225, at *2–3 (W.D. Wash. July 13, 2020) (finding that defendant failed to exhaust where the Warden's written denial clearly set forth the defendant's rights to an administrative appeal and the procedures necessary to file one and defendant failed to appeal); 28 C.F.R. § 571.63(a) ("When an inmate's request is denied by the Warden, the inmate will receive written notice and a statement of reasons for the denial. The inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)"). It is unclear whether the failure of the denial letter to outline the administrative remedy available defendant here renders his request effectively exhausted. It is unnecessary to achieve clarity on the exhaustion issue for purposes of this motion, however.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 6

breath, body aches, joint pain, anxiety, and headaches." Dkt. # 136 at 6. Healthcare provider progress notes dated November 5, 2020, however, document "[n]o chest pain or sob [i.e., shortness of breath]." Dkt. # 148 at 167. The Court need not reiterate the widely known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of February 8, 2021, the BOP reports 1,867 federal inmates and 1,737 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 8, 2021). Since the BOP reported its first case in late March 2020, at least 217 federal inmates and four BOP staff members have died from the virus. Id. Reeves currently reports two inmates with active, positive COVID-19 test results, and eighteen inmates as having recovered. Id.

  A review of defendant's BOP medical records reflects that that he suffers from abdominal pain, anxiety and depression, as well as shoulder and back pain.[4] See Dkts. # 144, # 148, # 153, # 157. Defendant's first supplemental memorandum in support of his motion for compassionate release touches on concerns regarding a lack of sufficient medical care generally, but it primarily argues that individuals with anxiety and depression disorders, such as defendant, are more likely to experience both increased severity in these disorders related to the stress of the pandemic *and* increased severity of symptoms from COVID-19 if they contract the virus. Dkt. # 142 at 3–5. In an additional supplemental memorandum in support of his motion for compassionate release, defendant complains that he has not received proper medical care because on September 21, 2020, tests revealed that he had blood in his stool and other "fecal abnormalities" such that a colonoscopy and referral was recommended, and yet in the course of

---

[4] Although defendant had previously been taking medication to treat hypertension, on May 12, 2020, defendant asked to stop taking the medication because his blood pressure had tested normal since his arrival at Reeves, staff discontinued the medication, and he was removed from the hypertension clinic roster at Reeves. Dkts. # 146 at 20–22, # 148 at 33, 48–49. According to the medical staff who on January 27, 2021, reviewed defendant's vitals for the previous 6 months, his blood pressure was well within normal levels. Dkt. # 157 at 44.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

3.5 months "absolutely nothing [was done] to help" him. Dkt. # 151 at 1–2. Additionally, in a reply to the government's response to defendant's supplemental memorandum and surreply, defendant further complains that his abdominal pain went untreated until his motion for compassionate release was filed, that he needs a surgery to address his hernia, and that this surgery has not yet been scheduled. Dkt. # 158 at 2. The Court addresses each of these arguments.[5]

First, with respect to defendant's argument related to anxiety and depression, progress notes from defendant's psychiatrist from September and December reflect that defendant has a depressive disorder, though he "[d]enie[d] clear depression" and expressed that his anxiety occurs mostly at night. Dkts. # 148 at 197, # 157 at 24. Defendant continues to be prescribed medication to support his mental health. Id. Defendant filed supplemental materials alleging that as of early January, he was experiencing considerable anxiety and depression. Dkt. # 154-1 at 1, 4. The government concedes that defendant's "anxiousness caused by [the unscheduled] colonoscopy appears to have affected his ability to sleep," and the government maintains that Reeves' medical staff will address this concern. Dkt. # 155 at 5–6. While the Court is concerned with any decline in defendant's mental health, defendant's medical records reflect that he has continued to receive treatment to address this area, and the CDC has not identified anxiety or depression as medical conditions that may increase an individual's risk related to COVID-19, See People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 8, 2021).

Second, turning to defendant's allegations about medical care to evaluate and address his fecal issues, the Court finds Reeves' failure to schedule a colonoscopy appointment after

---

[5] To the extent that defendant raises an Eighth Amendment claim challenging the conditions of his confinement, see Dkt. # 149 at 6–7, the Court declines to order his release on Eighth Amendment grounds based on the procedural posture of defendant's request for relief. See United States v. Numann, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (Burgess, J.) (An Eighth Amendment claim "relating to the manner and conditions of confinement—[is] not properly brought in a motion for compassionate release [under § 3582(c)(1)(A)] and this Court does not have jurisdiction to consider [it].").

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

September 21, 2020 disturbing.[6] Dkt. # 155 at 3. The government has conceded defendant's need to undergo a colonoscopy, Dkt. # 155 at 5, which has been recommended to rule out a "neoplasm," i.e., a tumor. See Neoplasm (Tumor), Yale Medicine, https://www.yalemedicine. org/conditions/neoplasm (last visited February 8, 2021). The Court is inclined to agree with the conclusion of the District Court for the Middle District of North Carolina that the "need to obtain adequate treatment for [a defendant's] disease when [BOP] appears unable to provide it without court oversight is a compelling reason for a sentence reduction," at least where the disease "can kill without appropriate medical care." United States v. Beck, 425 F. Supp. 3d 573, 581–82 (M.D.N.C. 2019) (involving a defendant with breast cancer where undisputed testimony established that delays in treatment "compromised her prospects for survival"). At this stage, however, both the existence of a tumor and its malignancy remain unclear.

Third, with regard to the hernia surgery, the government asserts that defendant's "robotic inguinal hernia repair" procedure is in the process of being scheduled. Dkt. # 155 at 4. Although the Court is sympathetic to defendant's warranted skepticism of the ability of Reeves' staff to efficiently schedule medical procedures for its inmates, the Court does not agree with defendant's contention that his "stomach pain . . . went untreated" until he filed his motion for compassionate release. Dkt. # 158 at 2. As the government observes, Teran "complained of abdominal pain since his arrival at Reeves in April 2020," and defendant received treatment to address pain that healthcare providers appear to have initially associated with constipation. Dkt. # 155 at 4; see also Dkt. # 146 at 8. Nevertheless, given that healthcare provider progress notes dated November 5, 2020 refer to "inguinal ligament pain" and the need to "r/o" (rule out) a hernia, Dkt. # 148 at 168, the government's poor progress in addressing defendant's continued abdominal pain is disconcerting.

In short, defendant appears to have some legitimate grievances regarding the adequacy of his medical treatment at Reeves, but even if the Court were to find that "extraordinary and

---

[6] More than four months elapsed between September 21, 2020 and the government's January 29, 2021 filing of its response to defendant's supplemental memorandum and surreply, at which point no colonoscopy had yet been scheduled. See Dkt. # 155 at 3.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

compelling" circumstances justified compassionate release, additional considerations lead the Court to deny defendant's motion.

### c. Additional Considerations

Prior to granting defendant's motion for compassionate release, the Court must find that defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. In his initial *pro se* motion for compassionate release, defendant claims that he "has no history of possession of weapons and no history of violence," and that "his only convictions are drug related." Dkt. # 136 at 11. Defendant is wrong on all counts, and the Court finds he does present a danger to the safety of others. See Dkt. # 146 at 13–15. The offense that led to defendant's current term of imprisonment is quite troubling. In 2016, defendant led a conspiracy, involving two of his nephews, to distribute 9.7 pounds of methamphetamine. PSR at ¶¶ 5–17, 25. These drugs cause considerable damage to families and communities. Although defendant has not been convicted of a similar drug-distribution crime, the government points to the fact that defendant has previously been arrested on several occasions, citing arrests in 1988 for possession of a controlled substance, and in 1996 for possession of narcotics as the "most concerning." Dkt. # 146 at 15; PSR at ¶ 36–37.

Defendant also has two prior convictions for crimes involving assaultive behavior. The first conviction is for misdemeanor battery from 1992. PSR at ¶ 32. The second battery conviction is from 2015 and involved a domestic violence incident with defendant's wife. PSR at ¶ 33. Notably, defendant was prohibited from possessing firearms as a result of the 2015 conviction, yet two firearms were recovered from his home upon his arrest for the underlying offense, and he committed the offense while on probation. PSR at ¶¶ 16, 23, 33–34. That said, defendant also completed a 52-week domestic violence program while on probation for the 2015 conviction, PSR at ¶ 33, and defendant's family members corroborated that defendant had been participating in Alcoholics Anonymous groups during the year before his most recent arrest. PSR at ¶ 56. These steps are commendable, as is defendant's engagement in education courses during his incarceration (e.g., "anger management," "good decision making," "truth about drugs," and "how to avoid recidivism"). Dkts. # 142-2 at 1, # 149-1 at 1. However, considering

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10

defendant's criminal history, and his previous willingness to involve his family members in criminal behavior, the Court remains concerned that if released, he will present a danger to the community. U.S.S.G. § 1B1.13.[7] Defendant's motion for compassionate release must therefore be DENIED.

### V. CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 136) is DENIED. Two of defendant's motions to seal (Dkts. # 143, # 152) and the government's motions to seal (Dkts. # 147, # 156) are GRANTED. Defendant's motion to seal medical records filed on December 18, 2020 (Dkt. # 150) is DENIED. The government's motion to file an overlength response (Dkt. # 145) is also GRANTED.

IT IS SO ORDERED.

DATED this 25th day of February, 2021.

Robert S. Lasnik
United States District Judge

---

[7] Because the Court has determined that defendant poses a danger to the community, it need not further address the factors set forth in 18 U.S.C. § 3553(a). That said, the Court agrees with the government's analysis of the § 3553(a) factors, see Dkt. # 146 at 16, and the Court concludes that defendant's circumstances do not warrant a reduction in sentence.